UNITED STATES of America,
Plaintiff–Appellant,

v.

Gavin Anthony McBEAN,
Defendant–Appellee.

No. 87–8960.

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1988.

Hinton R. Pierce, U.S. Atty., Frederick Kramer, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellant.

Thomas A. Withers, Oliver, Maner and Gray, Savannah, Ga., for defendant-appellee.

Before ANDERSON and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Appellee Gavin McBean was indicted for possessing with intent to distribute sixty pounds of marijuana in violation of 21 U.S.C. § 841(a). McBean filed a pretrial motion to suppress the marijuana which was granted by the district court. 697 F.Supp. 495. The Government appeals this order. We reverse.

These are the undisputed facts.[1] In the early morning hours of October 7, 1987, Georgia State Trooper B.E. Hodges stopped McBean on I-95 North in Georgia for tailgating and weaving. McBean exited his vehicle and stood with Hodges in front of Hodges' trooper car. After several minutes of casual conversation, Hodges issued warning citations to McBean, and then asked: "Well, Mr. McBean, you mind if I look in the car?" McBean responded: "No, go ahead." Hodges then retrieved from his trooper car a written consent-to-search form which McBean signed without reading.[2] Trooper Hodges then read most of the form to McBean, but he did not read

---

**1.** Because the facts are undisputed, we need not address the issue whether the recording of the entire stop and search on videotape alters the standard by which we review the district court's findings of fact.

**2.** McBean does not contend that he was unable to read and comprehend the form, or that he had any difficulty communicating with Trooper Hodges during the stop and search.

that portion of the form which stated that the scope of the consent included consent to search any luggage in the car.

The search of the passenger compartment of the car produced nothing. Trooper Hodges then opened the trunk of the car and found two closed pieces of luggage. Hodges queried McBean about the ownership and contents of the luggage, and McBean responded by stating that the luggage was not his, and by disclaiming knowledge as to the contents of the luggage.[3] The marijuana was found in one of the bags, and McBean was arrested.

After finding that the stop was not pretextual, and that McBean's consent was voluntary,[4] the district court concluded that the consent given by McBean was not wide enough in scope to include consent to search closed suitcases located in the trunk. The district court reasoned that McBean's oral consent did not include consent to search the luggage, and that the consent form which McBean signed was inefficacious because he did not read it. The district court recognized that "if a search is undertaken pursuant to permission, then the scope of the search can, in the absence of other circumstances, be limited by the consenter, whether at the outset or at some time during the search;" however, the district court reasoned that the jurisprudence "cannot be read as requiring that one must voice objection to prevent or limit a search to which he never acquiesced in the first place." The court concluded that "[a]s a matter of law, it cannot be said that failure to object under the circumstance of this case indicated [McBean's] acquiescence to a search of the luggage."

 The Fourth Amendment to the Constitution prohibits, on its face, unrea-

Note 2—Continued

The consent form reads as follows:

> Department of Public Safety
> Search Waiver
>
> Consent to Search
>
> I _____, HEREBY GRANT MY CONSENT TO _____ AND _____, OFFICER(S)
> NAME, RANK, BADGE NO. NAME, RANK, BADGE NO.
> OF THE DEPARTMENT OF PUBLIC SAFETY, STATE OF GEORGIA, TO SEARCH THE FOLLOWING:
> VEHICLE DESCRIBED AS:
> _____ COLOR:_____ YEAR:_____ MAKE:_____ BODY STYLE:_____ LICENSE NUMBER:_____ VEHICLE IDENTIFICATION #: INCLUDING LUGGAGE AND CONTENTS THEREOF.
> I UNDERSTAND THAT I HAVE THE RIGHT TO REFUSE TO CONSENT TO THE SEARCH DESCRIBED ABOVE AND TO REFUSE TO SIGN THIS FORM.
> I FURTHER STATE THAT NO PROMISES, THREATS, FORCE, OR PHYSICAL OR MENTAL COERCION OF ANY KIND WHATSOEVER HAVE BEEN USED AGAINST ME TO GET ME TO CONSENT TO THE SEARCH DESCRIBED ABOVE OR TO SIGN THIS FORM.
>
> DATE _____
> TIME _____
>
> _____
> SIGNATURE OF CONSENTEE

3. With the exception of a couple of statements which are inaudible, the following dialogue transpired:

> Hodges: Are both of these bags yours?
> McBean: No.
> Hodges [referring to the bag in which the marijuana was found]: This one's not yours?
> McBean [partially inaudible]: Uh-uh.
> Hodges [again, pointing to the bag in which the marijuana was found]: Who's is it? Who's bag is that?
> McBean: (inaudible).
> Hodges: Oh, some friends? What's in it?
> McBean: I don't know. They just gave me a bag, man.
> Hodges: They just gave you a bag to take to New York and you don't know what's in it?
> McBean: Uh-uh. I didn't look in there.
> Hodges: You didn't look in there, huh? I wonder what's in it? What you reckon's in it?

4. McBean does not challenge either of these findings on appeal.

sonable searches and seizures, and restricts warrant searches to those based upon probable cause.[5] Searches conducted with the consent of the individual maintaining an expectation of privacy in the object of search are excepted from the Fourth Amendment's requirements of a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Sihler*, 562 F.2d 349 (5th Cir.1977). The scope of a consent search is defined by the scope of actual consent in the same way that the scope of a search based upon a search warrant is defined by the warrant. *United States v. Gay*, 774 F.2d 368, 377 (10th Cir.1985); *United States v. Dichiarinte*, 445 F.2d 126, 129 (7th Cir.1971).[6] The Government argues that the search of McBean's luggage was within the scope of either the oral or written consent given by McBean to search the vehicle itself. Because our holding today is more narrowly premised, however, we need not decide whether McBean's consent was broad enough to include consent to search the luggage.

Apparently because the Government conceded that McBean had standing to challenge Hodges' search of the luggage, the district court did not explicitly address what we believe to be the threshold issue in this case: whether McBean had a legitimate expectation of privacy in the luggage and its contents. Since the Supreme Court's decision in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the correct inquiry is no longer whether an individual has standing to challenge a search separate and apart from the merits of his challenge. Instead, the analysis should proceed directly to the issue of whether the individual maintains a legitimate expectation of privacy in the object of the search. *United States v. Hawkins*, 681 F.2d 1343, 1344 (11th Cir.), *cert. denied*, 459 U.S. 994, 103 S.Ct. 354, 74 L.Ed. 2d 391 (1982) ("After [*Rakas v. Illinois*], the proper analysis proceeds directly to the substance of a defendant's Fourth Amendment claim to determine whether the defendant had a reasonable and legitimate expectation of privacy in the article at the time of the search and consequently, whether the Fourth Amendment has been violated."). Determining whether an individual has a legitimate expectation of privacy in the object of a search requires a two-part inquiry. *See United States v. McKennon*, 814 F.2d 1539, 1542–43 (11th Cir.1987). The first question, and the one which disposes of this case, asks whether the individual has manifested "a subjective expectation of privacy in the object of the challenged search." *Id.* at 1543. "[This inquiry] is a factual determination which is generally reviewed under a clearly erroneous standard." *Id.* (citations omitted).[7] Although the district court made no explicit finding on the point, that McBean had a legitimate expectation of privacy in the luggage and its contents is a conclusion necessarily implicit in the result reached by the district court. It follows, of course, that the district court implicitly found as a fact that McBean subjectively manifested an ex-

**5.** The Fourth Amendment provides:
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

**6.** As the Seventh Circuit explained in *Dichiarinte*:
> In our view, consent is a waiver of the right to demand that government agents obtain the authorization of a warrant to justify their search; and the need for a warrant is waived only to the extent granted by the defendant in his consent. A defendant's consent may limit the extent or scope of a warrantless search in the same way that the specifications of a warrant limit a search pursuant to that warrant. Both limit the officers' activity by stipulating the areas into which they may look.... Thus if government agents obtain consent or a warrant to search for a stolen television set, they must limit their activity to that which is necessary to search for such an item....

445 F.2d at 129–30 n. 3.

**7.** The second inquiry, whether society is willing to recognize the individual's expectation of privacy as legitimate, is a legal question which we review plenarily. *McKennon*, 814 F.2d at 1543. Because we dispose of this case at the first level of inquiry, we need not reach the second.

pectation of privacy in the luggage and its contents. This finding is clearly erroneous.

Both *McKennon* and *Hawkins* are closely analogous to the present case. In both of those decisions, we held that an individual who abandons luggage at the time of a search is precluded from challenging the legality of the search because he has no legitimate expectation of privacy in the abandoned luggage. These decisions control the result we reach today. McBean, when asked about the luggage, stated without reservation and unequivocally that the luggage was not his, and that he did not know what the luggage contained. Not only did he fail to manifest a subjective expectation of privacy in the luggage and its contents, he affirmatively disavowed any such expectation. We hold that his disavowal precludes him from challenging the legality of the consent search, and that the district court erred in granting McBean's motion to suppress.

For the reasons given in this opinion, the order of the district court is REVERSED, and the case is REMANDED with instructions that the district court enter an order denying McBean's motion to suppress.